HOOKER CRANE and others

v.

SIMEON FORD and others.

The part owners of a steam vessel being in litigation, to settle their rights in this court, and a receiver having been appointed under whom the vessel had sailed two years, and a third season approaching : a sale of the vessel was ordered on petition, though opposed by a minority of the owners.

It is unfit and inconvenient to continue such operations, so long under the direction of the court.

This court has a general power to order a sale, resting in like grounds with that of the maritime courts ;—and this though the bill was not framed for the purpose of a sale ;—and though some of the defendants had suffered the bill to be taken pro confesso; and those defendants had no notice of this petition ; the power to sell being incident.

And though one ground of opposition to the sale was, that the parties in possession of the vessel, had purposely mismanaged the concern.

1824.
March 29.

Receiver.
Sale of property in court.

THE suit of Waring v. Van Slyck of which this is a revivor, and to which it is a supplement, was commenced in 1820. A decree was made in 1821, from which there was an appeal to the court of errors.

The object of the suit, was to adjust the rights of the parties to the steam boat Ontario, and for an account. On the first of July 1822, a person had been appointed receiver of all moneys due, or to become due for the earnings of the boat; and under the direction of this person, she had been navigated in 1822 and 1823.

MR. FOOT now presented a petition of the present complainants, stating, that the receiver's accounts had been taken

by a master; that the boat was found to be in arrears to the receiver; and, that she could not under existing circumstances, be so employed, as to be more profitable for the future, than she had been for the past years; that large disbursements would be necessary to fit her out for another season, and praying that the boat might be sold.

Mr. S. M. Hopkins opposed the sale, upon affidavits, tending to shew that the accounts were fraudulent; that the dues to the boat had been purposely left uncollected, in order to give an unfavourable aspect to the accounts, and that in fact, the employment of the boat had been very profitable.

But the main principle of equity insisted on, was this; that the bill was only to adjust the shares and accounts of the parties; that it was personal; and not in rem; and that there was therefore, no foundation laid by the bill, on which to divest the right of any party to the vessel.

This was further urged in another point of view, viz.; that here the bill stands, taken pro confesso, against several of the parties, and those parties by the course of the court, have no notice of the hearing; neither here is there actual notice to them, of these proceedings. Now, to grant this motion, would be to extend the effect of the confession of the bill beyond the bill itself, and beyond all that the party confessing it could have any expectation of. There may be parties whose rights were not disturbed by the claims of the bill, and who therefore, might safely suffer it to be taken pro confesso, and who yet would have answered and objected, had there been in the bill a prayer for a sale.

Mr. Foot showed in reply, that the interest of the petitioners, was a major part of the whole interest in the boat; that the opposing parties represented but a very small share.

The receiver has accounted regularly before the master; due notice of taking the account was given; and the master's report has been regularly confirmed. It must be taken to be true.

As to the proceeding not being in rem, the bill prays general relief; and the sale is incidental. Such a power is exercised in many other like cases upon a general bill, such as cases of partition; of foreclosure; bills by legatees; and by

*1824.*

CRANE
v.
FORD.

judgment creditors; and in cases of property devised to pay debts, &c.

So the court may universally, order a sale, when there is either a lien, or a fund in the hands of the court. Here the receiver has a lien. 9 Ves. 209.

This property is necessarily perishable and expensive; the expediency of a sale is manifest.

In REPLY it was insisted, that here was neither lien, nor a fund in court.

All the cases cited on the other side, rest on special grounds, and therefore strengthen the position, that on a general bill for an account, the court can not sell the subject.

Partition is a striking example of this. The supreme court can sell by statute. Can this court sell, by common law, on a bill not framed for that object? Can it divest the freehold of a party, who had no objections to a partition, and therefore confessed the bill, but would never have consented to a sale, and might have shewn it to be improper?

The receiver has no lien. If he had, he might set at defiance the very court that placed him there.

All our sales of mortgaged premises, are grounded on a special prayer in the bill for that purpose. [MR. FOOT questioned this.]

So must be the case of sales to satisfy legatees; and the other cases mentioned, are cases of a perfect legal lien.

THE COURT took time to consider the question; and the next morning said that this court must have a power to sell the subject of litigation, whenever such a measure becomes necessary to preserve the interests of the parties; and that this must rest on the same foundation of general right, as the like power in the maritime courts, with respect to vessels.

But in this case, the vessel has sailed under the direction of a receiver for two years, and must be fitted out for another season, or lie useless; and it is highly inconvenient and unfit, that such operations should be conducted under the direction of this court, for so long a time.

Without entering therefore, into the other questions discus-

sed by the parties, the court thought this to be a case, where **1824.**
it was indispensable to direct a sale.

Order accordingly.